2003 SD 45

**WOLD FAMILY FARMS, INC.,**
Plaintiff and Respondent,

v.

**HEARTLAND ORGANIC FOODS,
INC., Defendant and
Petitioner.**

No. 22767.

Supreme Court of South Dakota.

Considered March 20, 2003.

Decided April 23, 2003.

Allen L. Wold of Wold Family Farms, Pro se plaintiff and respondent.

H. Eugene Paulson of Heartland Organic Foods, Inc., Pro se defendant and petitioner.

PER CURIAM.

[¶ 1.] Heartland Organic Foods, Inc. (Heartland), H. Eugene Paulson and Beverly Paulson petition for intermediate appeal from the circuit court's entry of an order of contempt against Paulsons for failing to produce Heartland's business records to Wold Family Farms, Inc. (Wold). We vacate the order and remand for dismissal of the action without prejudice.

## FACTS AND PROCEDURE

[¶ 2.] Wold is a shareholder in Heartland. On September 12, 2002, Wold sent a certified letter to Heartland requesting the release of certain financial information. On September 24, 2002, Wold filed the certified letter with the Roberts County clerk of courts. The next activity in this matter, as represented by the circuit court's file, was the entry of an order on October 2, 2002, compelling production of records signed by the Honorable Jon S. Flemmer. That order required H. Eugene Paulson and Beverly Paulson, as officers and majority shareholders of Heartland, to produce certain financial records to Wold no later than October 11, 2002.

[¶ 3.] On October 11, 2002, Wold filed an affidavit with the circuit court indicating that on October 8, 2002, Paulsons were served with the order. However, despite repeated requests by Wold the records were not produced. In the affidavit, Wold requested that an order to show cause be issued directing Paulsons to appear before the court to answer why they should not be held in contempt for failing to produce the records.

[¶ 4.] On October 15, 2002, Heartland, by and through its officer H. Eugene Paulson, filed a motion in affidavit form seeking to quash the order compelling production of records and set forth the reasons why production was not possible, namely that the company computer was stolen.

[¶ 5.] On October 25, 2002, the circuit court entered an order requiring Paulsons to appear on November 15, 2002, to show cause why they were not in contempt of court for failing to comply with the October 2, 2002, order to produce the financial records. The sheriff served the order and notice of that hearing upon officer Beverly

Paulson on October 30, 2002, and officer H. Eugene Paulson on October 31, 2002.

[¶ 6.] On November 15, 2002, Heartland, again by and through its officer H. Eugene Paulson, filed an affidavit in defense of the order to show cause. Following a hearing, the circuit court entered findings and an order of contempt. The circuit court specifically found that an order for production had been issued; Heartland and its officers were aware of the order; the corporation had the ability to comply with the order; and the failure to comply with the order was willful. The circuit court also found that "the appropriate procedure was followed in bringing the request for production of corporate records before the court." The circuit court determined that Heartland could purge the contempt by producing the records to Wold.

[¶ 7.] On December 16, 2002, Heartland filed a "motion for new trial" challenging the order of contempt. On January 2, 2003, Wold filed an affidavit indicating he gave notice of his intention to inspect the records but was told by Paulsons it was impossible to comply with the court's order. As a result, Wold requested the circuit court to take further action, including the imposition of incarceration and financial sanctions.

[¶ 8.] An amended order to show cause was issued January 21, 2003, requiring Heartland to appear on February 20, 2003, to show cause why such further sanctions should not be instituted. Service of the order was effectuated January 27, 2003. In response, Heartland filed a document captioned "motion for new trial, trial by jury, change of venue." However, Heartland and its officers did not appear at this show cause hearing.

[¶ 9.] On February 27, 2003, the circuit court entered an order finding Paulsons, as officers for Heartland, in contempt of court. That order recites that service of the order to show cause was properly made; Heartland had previously been held in contempt; Heartland was given an opportunity to purge the contempt; Heartland has the ability to comply with the orders; and the imposition of fines would not remedy the contempt because of Heartland's insolvency. As such, the circuit court ordered:

> [T]hat the officers and directors of Heartland, namely H. Eugene Paulson and Beverly Paulson, be alternately incarcerated in the Roberts County Jail for a period of five (5) days at a time, with weekends off, until such time as the requested corporate and financial records are produced for inspection by Plaintiff. It is the Court's intention that one of the officers/directors, either H. Eugene Paulson or Beverly Paulson, be incarcerated from Monday through Friday of one week, then released for the weekend, and the other officer/director incarcerated for the following Monday through Friday, and released for the weekend, and so alternating until the records that have been ordered to be produced are produced. This will allow one officer/director to always be available to work on preparing or retrieving the requested records and to conduct the Defendant's business.

An arrest warrant in conformity with this order was issued the same day.

[¶ 10.] Heartland and its officers filed a petition for permission to appeal with this Court and an application for stay of proceedings. The order for temporary stay was granted March 12, 2003.[1] In the petition and response, as well as throughout these proceedings, all parties have appeared *pro se*.

---

**1.** It is necessary for this Court to grant the petition in order to acquire jurisdiction to act.

[¶ 11.] After reviewing the contents of the petition, the response and the record certified pursuant to SDCL 15–26A–20, we find it necessary to address the following issues: (1) whether necessary procedures for a finding of contempt were followed in the circuit court; and (2) whether the circuit court had jurisdiction to act in this matter.

## STANDARD OF REVIEW

[¶ 12.] "The appropriate remedy or punishment for contempt of court, and any reconsideration thereof, lies within the sound discretion of the trial court." *Harksen v. Peska,* 2001 SD 75, ¶ 10, 630 N.W.2d 98, 101. We review conclusions of law under a de novo standard with no deference given to the circuit court. *Id.* "We are required to take notice of jurisdictional questions, whether presented by the parties or not." *Double Diamond Construction v. Farmers Cooperative Ass'n,* 2003 SD 9, ¶ 6, 656 N.W.2d 744. This can be done on the reviewing court's own motion. *Ripple v. Wold,* 1997 SD 135, ¶ 15, 572 N.W.2d 439, 443. The issue of jurisdiction may be raised at any time and is reviewed by this court de novo. *Devitt v. Hayes,* 1996 SD 71, ¶ 6, 551 N.W.2d 298, 300.

## ANALYSIS

## ISSUE ONE

[¶ 13.] **Whether necessary procedures for a finding of contempt were followed in the circuit court.²**

[¶ 14.] We have recognized that "[s]ince civil contempt can result in incar-

---

ceration, constitutional safeguards must be observed." *Thomerson v. Thomerson,* 387 N.W.2d 509, 512 (S.D.1986). In *Thomerson,* we held that specific requirements are necessary for a finding of contempt "because the very jurisdiction of the court rests upon proper procedure." *Id.* Given the necessity of these jurisdictional requirements we determined in *Thomerson* that "a detailed review appears appropriate." *Id.* We find cause here to review that procedure again.

Contempt of court is classified as either criminal or civil. Criminal or direct contempts are words spoken or acts committed in the presence of the court or during its intermissions which tend to subvert, embarrass, or prevent the administration of justice and may be summarily punished by the presiding judge as he may deem just and necessary. Constructive or civil contempts arise not from matters transpiring in court but rather from a person's failure to comply with orders and decrees issued by the court in a civil action for the benefit of an opposing party. It is not always easy to classify a particular act as belonging either to criminal or civil contempt. It may partake of the characteristics of both. However, the distinction in punishment is clear. In criminal contempt the order itself is in the nature of punishment. In civil contempt the punishment is coercive, that is, it compels the person to act in accordance with the court's order.

*Id.* (internal citations omitted). On these facts it is clear that we are concerned with civil contempt.

---

SDCL 15–26A–3(6). *See Dep't of Highway Safety v. Bennett,* 832 So.2d 248 (Fla.App. 2002); *Commitment of Singleton,* 829 So.2d 402(Fla.App. 2002) (granting the petition, vacating the trial court's order granting motion to compel discovery and remanding for further proceedings simultaneously).

**2.** Although issue two on jurisdiction is dispositive of this appeal, it is likely that the matter may be re-filed at a future date to overcome current jurisdictional defects. *To avoid a possible second appeal, we address the issue of proper procedures concerning civil contempt.*

[¶ 15.] "A prosecution for civil contempt, as distinguished from criminal contempt, involves features of a formal trial including the making of an affidavit and the giving of notice to the contemner." *Id.* "The affidavit seeking an adjudication of civil contempt is treated as a complaint or information to which the accused, in effect, is requested to plead guilty or not guilty." *Id.* The affiant must establish four elements for a prima facie case warranting a finding of contempt. Those elements are (1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order. *Id.* (citing *Rousseau v. Gesinger*, 330 N.W.2d 522, 524 (S.D.1983)). The complaining affidavit cannot be stated upon presumption, intendments, or upon information and belief. *Id.* Rather, it must be based on specific facts within the knowledge of the affiant. Here, Wold submitted an affidavit outlining what he asserted to be contumacious behavior and requested the imposition of imprisonment or fines in order to compel production.

[¶ 16.] This Court has held that:

If the contempt consists in the refusal of the party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed until he complies with the order. Adjudication for contempt which contains a commitment for imprisonment is insufficient if the mandate is to take the prisoner into custody and detain him until the further order of this court or until he shall be discharged by due course of law.

*Id.* "To form the basis for a subsequent finding of contempt, an order must state the details of compliance in such clear, specific, and unambiguous terms that the person to whom it is directed will know exactly what duties or obligations are imposed upon him." *Karras v. Gannon*, 345 N.W.2d 854, 856 (S.D.1984). If imprisonment is imposed in a civil contempt proceeding it cannot be for a definite term or it would become punitive and criminal penalties cannot be imposed in a civil setting. *Thomerson*, 387 N.W.2d at 514; *Karras*, 345 N.W.2d at 856. Therefore, the party may be held until he complies with the order or demonstrates that compliance is impossible. This is what the circuit court ordered.

[¶ 17.] "Since the punishment for civil contempt could be imprisonment, the accused is entitled to representation by counsel as a matter of right." *Thomerson*, 387 N.W.2d at 513. The United States Supreme Court has stated:

Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant to either the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty.

*Id.* (quoting *Cooke v. U.S.*, 267 U.S. 517, 536–37, 45 S.Ct. 390, 395, 69 L.Ed. 767). *See also* 17 Am.Jur.2d *Contempt*, § 92; *Simmons v. Simmons*, 66 S.D. 76, 278 N.W. 537, 538 (S.D.1938). This is not a case of direct contempt occurring in open court but, instead, a failure to comply with the orders of the court in a civil action or constructive contempt. Therefore, these safeguards are applicable to the contempt

prosecution.[3]

[¶ 18.] Here, the record does not demonstrate that the circuit court either advised Heartland's officers of this right or appointed counsel for the officers prior to ordering imprisonment for failing to comply with the order to produce records. Failure to do so is procedural error requiring reversal.

## ISSUE TWO

[¶ 19.] **Whether the circuit court initially had jurisdiction to act in this matter.**

[¶ 20.] "All facts showing the jurisdiction of the court must appear in the affidavit." *Thomerson,* 387 N.W.2d at 513. Without an affidavit stating every material fact constituting the alleged violation the court has no jurisdiction. *Id.* "When the court has acquired jurisdiction an appropriate adjudication can be rendered, including a commitment to jail even though the committed party in contempt is not personally present." *Id.* Therefore, we turn to the question of whether the circuit court initially had jurisdiction to act.

[¶ 21.] The record demonstrates that the circuit court became involved in this dispute following the filing of a certified letter from Wold to Heartland requesting the release of certain financial information. From there, the circuit court entered an order to show cause and eventually a finding of contempt. However, there is nothing in the file to demonstrate that the circuit court ever acquired jurisdiction in this matter. In essence, the circuit court was enforcing a discovery request prior to the commencement of any action. The circuit court has never acquired jurisdiction to act in this dispute between these entities.

[¶ 22.] SDCL 15–2–30 provides that "an action is commenced as to each defendant when the summons is served upon him, or on a codefendant who is a joint contractor or otherwise united in interest with him." In addition, a motion for an order compelling discovery may be brought by "a party, upon reasonable notice to other parties and all persons affected thereby." SDCL 15–6–37(a). On this record, there are no parties because an action has not been commenced by the service of a summons. As a result, the circuit court was drawn into a dispute concerning the production of business records that it had no authority to act upon. This was clearly improper.

[¶ 23.] "Service of process vests a court with jurisdiction to act." *Nolan v. Nolan,* 490 N.W.2d 517, 520 (S.D. 1992). "Thus, due and legal service of process is necessary to give a court jurisdiction over a defendant." *Id.* Without jurisdiction to act, the orders and judgment of the court are void *ab initio. Id.* at 521. "In order for the trial court to have jurisdiction in these contempt proceedings, personal service upon [defendant] under the provisions of SDCL 15–6–4 was mandatory. Because this service is absent, jurisdiction is totally lacking." *Matter of Gillespi,* 397 N.W.2d 476, 477 (S.D.1986).

[¶ 24.] "[T]he failure to issue, file, or serve a summons, as in this case,

3. In the case of indirect contempt, civil or criminal, unless the trial judge predetermines the nature of the infraction is of insufficient gravity to warrant the imposition of imprisonment if the accused is found guilty, the unrepresented accused must be advised of his or her right to counsel and, absent a knowing and intelligent waiver thereof, be given adequate opportunity to obtain representation. If the accused is determined to be indigent, counsel must be appointed before any critical stage of the contempt proceeding.

*Hunt v. Moreland,* 697 S.W.2d 326, 329–30 (Mo.App. E.D.1985).

deprives the court of jurisdiction." *Ripple v. Wold*, 1997 SD 135, ¶ 15, 572 N.W.2d 439, 443; *See also Lekanidis v. Bendetti*, 2000 SD 86, ¶ 33, 613 N.W.2d 542, 549 (recognizing that it is well settled law that an action is commenced by the service of a summons and without valid service of process the trial court has no jurisdiction to act.). "One may research over 100 years of decisions and find the law has remained the same. No proper service. No jurisdiction." *Wagner v. Truesdell*, 1998 SD 9, ¶ 17, 574 N.W.2d 627, 631 (Gilbertson J., concurring in result).

[¶ 25.] "Disobedience of, or resistance to, a void mandate, order, judgment, or decree, or one issued by a court without jurisdiction of the subject matter and parties litigant, is not contempt." 17 CJS *Contempt* § 16. "We must keep in mind the distinction between a void order and one that is merely erroneously entered, for disobedience of a void order is not punishable as contempt, whereas an order erroneously or improvidently entered must be complied with." *Karras*, 345 N.W.2d at 857. The result is that the "disobedience of a void order is not punishable as contempt." *Nolan*, 490 N.W.2d at 521.

[¶ 26.] The circuit court had no jurisdiction in this matter to issue the order compelling production of records given the absence of service of process. Therefore, the circuit court did not have jurisdiction to issue the subsequent orders attempting to enforce that initial order. Because the circuit court never acquired jurisdiction in this matter the order of contempt is void *ab initio*.

4. We would point out that an individual who is not a licensed attorney may not appear pro se to represent a corporation of which he is a director, officer or shareholder. *See Rosebud*

[¶ 27.] Given the state of this record, we are compelled to take this opportunity to emphasize that *pro se* litigation is on the rise in the courts of South Dakota. This requires the members of the bench to actively assess whether they have jurisdiction to act in any particular matter. When the adversary process does not reveal such an inherent defect the court has the responsibility to intercede. Though this is required in every case, it becomes especially pronounced when the parties appear *pro se*.[4]

[¶ 28.] Accordingly, we grant the petition, dismiss the orders of the circuit court for lack of jurisdiction, vacate the circuit court's order of contempt and arrest warrant and remand for dismissal of the action without prejudice.

[¶ 29.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.

*Fed. Cr. Union v. Mathis Implement*, 515 N.W.2d 241, 244 (S.D.1994)(Miller, C.J., concurring specially).